## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**HEALTHCARE VENTURE PARTNERS, LLC, d/b/a THE RIDGE**

        **Plaintiff,**

v.

**ANTHEM BLUE CROSS AND BLUE SHIELD, et al.,**

        **Defendants.**

**Case No. 1:21-cv-29**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

This cause comes before the Court on Plaintiff Healthcare Venture Partners' ("the Ridge") Motion to Remand and for Fees and Costs (the "Motion") (Doc. 10), following Defendants Community Insurance Company[1] and Blue Cross and Blue Shield of Maine's (collectively "BCBS"[2]) removal (Doc. 1) of this action from state court on January 14, 2021. For the reasons below, the Court **GRANTS** the Ridge's Motion (Doc. 10) and accordingly **REMANDS** the case to Clermont County Court of Common Pleas. However, the Ridge's request for attorneys' fees is **DENIED**.

---

[1] In the Ridge's Complaint, it improperly names Anthem Blue Cross and Blue Shield, which is a d/b/a/ for Community Insurance Company, another named defendant. (Notice of Removal ("Notice"), Doc. 1, #1 n.1).

[2] The Ridge's Complaint also names as defendants Blue Cross and Blue Shield Association, Blue Cross and Blue Shield of Texas, and other Blue Cross Blue Shield Companies to be added as discovery proceeds. (Doc. 2, #413–14). For the sake of simplicity, the Court will continue to refer to all defendant entities collectively as "BCBS."

## BACKGROUND

The Ridge is a healthcare provider in Milford, Ohio. It has allegedly treated members of healthcare plans issued or administered by BCBS. (Compl., Doc. 2, #414–15). The Ridge does not have a contract with BCBS and, thus, is an "out-of-network provider." (Opp. to Mot. ("Opp."), Doc. 17, #490). Instead of billing BCBS directly when the Ridge treats one of its members, the Ridge alleges that it receives an assignment of the patients' rights to receive benefits ("benefit claims" or "BCs"). (*Id.*). The Ridge states that, although BCBS has "paid [the Ridge] directly for the [benefit claims] in some instances … [,] in most other instances, [BCBS has] underpaid the claim, not paid the claim, or directly paid the [insured] the claim payment." (Compl., Doc. 2, #415).

On September 11, 2020, the Ridge wrote a letter to BCBS "advising [it] regarding the large account receivable due and owing the Ridge by [BCBS]." (*Id.* at #417). In response, BCBS requested a "listing of [benefit] claims which were not appropriately paid." (*Id.*). On September 24, 2020, the Ridge sent BCBS a spreadsheet ("the Spreadsheet") containing a list of benefit claims that the Ridge alleges had not been paid. (*Id.*). The Spreadsheet features prominently in the arguments regarding remand.

On December 10, 2020, having not received payment, the Ridge filed a lawsuit in the Court of Common Pleas of Clermont County, Ohio. (*Id.* at #413). The Ridge's Complaint alleged eight causes of action, including an action on account, an action for an accounting, conspiracy to underpay or not pay claims, declaratory judgment, unjust enrichment, breach of contract, promissory estoppel, and tortious interference

with contract. (*See id.*). All of the counts related to BCBS's alleged failure to pay the BCs to the Ridge.

On January 14, 2021, BCBS removed the case to this Court. (Notice, Doc. 1). In its Notice of Removal, BCBS states that the case is removable on two separate grounds. (*Id.* at #1). First, BCBS argues that some of the BCs on which the Ridge sought recovery from BCBS arose under plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and thus the case is removable under 28 U.S.C. § 1441(a) pursuant to the doctrine of complete ERISA preemption. (*Id.*). Second, BCBS asserts that some of the claims as to which payment is sought were assigned to the Ridge by participants under plans governed by the Federal Employees Health Benefits Act ("FEHBA"), and thus the case is removable under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. (*Id.*). BCBS acknowledges that some of the BCs at issue were assigned by participants under plans governed neither by ERISA, nor by FEHBA. But BCBS nonetheless argues that the entire case is removable, either based on supplemental jurisdiction under 28 U.S.C. § 1367, or because federal officer removal provides for removal of an entire case, not merely the claims directed against the federal officer. (*Id.* at #4).

The Ridge moved to remand to state court on February 11, 2021, arguing that neither § 1441(a), nor § 1442(a)(1), provides for removal on the facts here. (Doc. 10). The Ridge also requests the attorneys' fees it incurred in connection with seeking remand. (*Id.* at #469).

## LAW AND ANALYSIS

**A.  Removal Was Not Proper Under The Doctrine Of Complete ERISA Preemption.**

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." A district court has original jurisdiction over "all actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

To determine if a case arises under federal law, ordinarily courts are restricted to the face of the plaintiff's well-pleaded complaint. *K.B. v. Methodist Healthcare*, 929 F.3d 795, 799 (6th Cir. 2019). An exception to this rule arises, however, when Congress "passes a statute so broad that it 'wholly displaces ... state-law cause[s] of action through complete pre-emption.'" *Id.* (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). In cases where complete preemption applies, a defendant may remove a case even if the face of the complaint does not implicate federal law. *Id.* ERISA is one statute that gives rise to complete preemption. As the Sixth Circuit has explained, "[a] state suit may be completely preempted (and subject to removal) if it asserts a state law cause of action to enforce the terms of an ERISA plan and that suit conflicts with or duplicates the federal cause of action provided in ERISA's enforcement provision...." *Id.* at 800. Stated alternatively, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). That in

4

turn means that any suit asserting such a claim constitutes an action "arising under" federal law, and is thus subject to removal under 28 U.S.C. § 1441.

Here, BCBS argues that complete ERISA preemption applies based on the Spreadsheet the Ridge sent BCBS and later referenced in its Complaint. Specifically, BCBS points to paragraph 33 in the Complaint, in which the Ridge states: "on September 24, 2020, The Ridge sent [BCBS] a spreadsheet containing a listing of claims which have not been paid." (Doc. 2, #417, ¶ 33). According to BCBS, the "spreadsheet identifies claims related to at least 9 individuals insured by ERISA plans." (Opp., Doc. 17, #508). And based on that fact, BCBS argues that "[the Ridge's] own document confirms that ERISA … claims are at issue." (*Id.*).

The Ridge counters that BCBS takes the reference to the Spreadsheet in its Complaint out of context. The Ridge points out that its Complaint specifically disclaims any unpaid BCs under ERISA-plans at least five separate times. (Reply to Opp. ("Reply"), Doc. 18, #523 (citing Compl., Doc. 2, #418, ¶¶ 38, 39, #425, ¶¶ 92, 93, #430, ¶ 129)). The Ridge states that it merely referenced the Spreadsheet to serve as "an example, for the State Court, of the horrible business practices of [BCBS] in failing to respond to regular and routine inquiries from providers regarding the status of claims." (Reply, Doc. 18, #524). Thus, inclusion of a BC on the Spreadsheet does not mean that the Ridge is asserting a claim based on that BC. The Ridge argues that it has the right, as plaintiff, "to define what claims it is litigating and what claims it is not litigating." (*Id.* at #523). And on that front, "ERISA claims are not involved in the State Complaint." (*Id.*).

5

To determine whether a cause of action is subject to complete ERISA preemption, thus rendering a case removable, the Court applies a two-part test. The removing party first must show that "the plaintiff [is] complaining about a denial of benefits under the terms of [an] ERISA plan." *K.B.*, 929 F.3d at 800. Second, the removing party must show that "the plaintiff [alleges only] the violation of a legal duty (federal or state) that is *dependent* on ERISA or on the ERISA plan's terms. No other independent legal duty [may be] implicated by a defendant's action." *Id.* (internal citations omitted). If a state law claim meets these requirements, then under the doctrine of complete preemption, it is "in essence a claim for the recovery of an ERISA plan benefit. Thus, the claim must be subject to ERISA's enforcement scheme in federal court." *Id.* at 801 (internal citations and quotation marks omitted).

Applying this test here, the Court finds that BCBS's effort to remove the claim based on ERISA preemption fails at step one. As the removing party, BCBS bears the burden to show that the Ridge is "complaining about a denial of benefits under the terms of [an] ERISA plan." *Id.* at 800. And in assessing whether BCBS has met that burden as to the Ridge's claims here, "the allegations of the Complaint must be read as a whole and harmonized to determine whether a plausible claim has been suggested." *Mac v. Blue Cross Blue Shield of Mich.*, Case No. 16-cv-13532, 2017 WL 2450290 at *9 (E.D. Mich. June 6, 2017) (citing *Pegram v. Herdrich*, 530 U.S. 211, 230 (2000)).

The problem for BCBS is that the Ridge's Complaint is clear that the Ridge is not asserting a right to recovery for any insurance benefits arising under ERISA

plans. Indeed, the Complaint expressly says just that at multiple points. (*See, e.g.*, Doc. 2, #418, ¶ 38 (stating that "[t]his litigation involves Non-ERISA Claim Payments due The Ridge by the Defendants"), #418, ¶ 39 (stating that "this lawsuit seeks to recover benefits due to The Ridge under the terms of those BCBS health plans which were not governed by ERISA"), #430, ¶ 129 ("[t]his cause of action seeks to recover benefits due to The Ridge under the terms of those BCBS plans which were not governed by ERISA, to enforce rights under the terms of the plans, and/or to clarify rights to future benefits under the terms of the plans.")). The Ridge is the master of its Complaint, and it has elected not to seek recovery for amounts potentially due under any ERISA plan. That is its right. See *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (observing that "'the plaintiff is the master of the complaint' and free to choose between legal theories") (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)).

BCBS tries to sidestep the Complaint's plain language disclaiming recovery for any insurance benefit under an ERISA plan by taking the Spreadsheet out of context. According to BCBS, the inclusion on the Spreadsheet of a few unpaid BCs under ERISA plans means that the Ridge is seeking to recover on those BCs. The Spreadsheet simply will not bear the weight that BCBS ascribes to it. Rather, the Complaint's lone reference to the Spreadsheet must be read in conjunction with the rest of the Complaint, which states multiple times that no ERISA claims are at issue. (Doc. 2, #418, ¶¶ 38, 39, #430, ¶ 129). To the extent that the Spreadsheet includes any such claims, the Ridge has made clear that it is not seeking recovery on those

claims, but rather, at most, pointing to them as additional evidence was to why the Ridge should recover on *other* BCs, which did not arise under ERISA plans.

Accordingly, because the Court finds that the Ridge is not complaining about, or seeking recovery for, the denial of benefits under the terms of an ERISA plan, complete ERISA preemption cannot provide a proper basis for removal under § 1441(a). And, as this lawsuit thus does not involve any claims arising under ERISA, BCBS of course cannot rely on supplemental jurisdiction under 28 U.S.C. § 1367 as a basis for sweeping in the admittedly non-ERISA claims (and, in turn, making them removable). In short, ERISA provides no basis for this action to be heard in federal court.

## B. Without Deciding Whether The Court Has Removal Jurisdiction Under § 1442(a)(1), The Court Finds Remand Is Appropriate.

BCBS, though, has another card up its sleeve. It claims that the federal officer removal statute, 28 U.S.C. § 1442(a)(1), also allows removal here. (Notice, Doc. 1, #1). Section 1442(a)(1) states, in pertinent part, that an action may be removed to federal court if it is brought against "[t]he United State or any agency thereof or any officer (or any person acting under that officer) of the United States … for or relating to any act under color of such office." As the Sixth Circuit has explained, "the purpose of the federal-officer removal statute is to protect federal officers from hostility toward the federal government or the enforcement of federal laws." *Mays v. City of Flint,* 871 F.3d 437, 448 (6th Cir. 2017).

Unlike removal under 28 U.S.C. § 1441, where courts resolve all doubts in favor of remand, the Supreme Court has cautioned against limiting § 1442(a)(1) with

a "narrow, grudging interpretation." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (quoting *Willingham v. Morgan,* 395 U.S. 402, 406–7 (1969)). That is because "[o]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed." *Bennett*, 607 F.3d at 1085 (quoting *Willingham,* 395 U.S. at 406–7). Rather, those invoking § 1442(a)(1) need only show they can "raise a colorable defense arising out of their duty to enforce federal law." *Id.* (quoting *Willingham*, 395 U.S. at 406–7). Moreover, "[s]ection 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency[.]" *Bennett*, 607 F.3d at 1084 n.7 (internal quotation marks omitted) (citation omitted); *see also In re Jenkins Clinic Hosp. Found.,* No. 87-6114, 1988 WL 114807, at *4 (6th Cir. Oct. 28, 1988) ("[w]hen federal parties remove an action under Section 1442(a)(1), the federal court assumes jurisdiction over all the claims and parties in the case regardless of whether the federal court could have assumed original jurisdiction over the suit") (quoting *District of Columbia v. Merit Systems Protection Bd.,* 762 F.2d 129, 132–33 (D.C. Cir. 1985) ("*Merit Systems*")).

Against that backdrop, BCBS argues that removal of the entire case under § 1442(a)(1) is proper here because at least some of the Ridge's claims implicate healthcare plans that BCBS administers under contract with the federal government. (Opp., Doc. 17, #495–96). As factual support for that assertion, BCBS again points to the Spreadsheet referenced in the Complaint, which includes at least one patient,

J.E., who was enrolled in the Blue Cross and Blue Shield Service Benefit Plan (the "Service Benefit Plan"). (*Id.*). The Service Benefit Plan is a government-sponsored health plan for federal employees governed under FEHBA. (*Id.* at #492). The Office of Personnel Management ("OPM") creates insurance plans like the Service Benefit Plan ("FEHBA-plans") by contracting with private insurance providers like BCBS. (*Id.*). BCBS cites numerous cases where courts have found that "suits against entities administering [FEHBA-plans] are removable by the [plans'] administrators under the Federal Officer Removal Statute." (Notice, Doc. 1, #9–10 (citing *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indemn. Co.*, 935 F.3d 352 (5th Cir. 2019) ("*St. Charles I*"); *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012*); Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross & Blue Shield of Fla, Inc*., No. 03-15664, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005))). In short, BCBS argues that, by referencing the Spreadsheet in its Complaint, the Ridge placed at least one FEHBA-plan at issue, making removal appropriate under 28 U.S.C. § 1442(a)(1).

The Court concludes that it need not reach the merits of BCBS's legal argument. More specifically, the Court need not decide whether the inclusion of one or more BCs arising from a FEHBA-plan would make the case removable under § 1442(a)(1). That is because the Court finds that, to the extent any such claims were ever part of this action, the Ridge has waived those claims in connection with its action here. And, based on the Ridge's waiver of those claims, the Court determines that remand is appropriate.

The details as to how the Court reaches that result, however, bear further explication. In particular, as discussed below, while it is clear that the Ridge argues in its remand papers that it is not seeking recovery based on "an unpaid claim under the Federal Employee Health Plan," (Doc. 10, #463), it is not exactly clear what the Ridge means by that assertion. That is, the Ridge may be arguing that its Complaint did not include any claims for unpaid BCs under FEHBA-plans in the first instance, and thus was not properly removable on those grounds. Alternatively, the Ridge may be claiming that, even if the Complaint at one point advanced such claims, the Ridge has waived those claims since the action was removed to this Court, and thus the case now should be remanded. For the reasons stated below, the Court rejects the first of these arguments (i.e., that the Complaint never included such claims), to the extent that the Ridge is advancing it, but accepts the second (i.e., that the Ridge has now waived such claims).

### 1. The Ridge's Complaint States Claims For Unpaid Benefit Claims Under FEHBA-Plans.

The Ridge may be claiming that, on the face of its Complaint, it never states a claim for unpaid BCs under any FEHBA-plan. If that is what the Ridge is arguing, the Court disagrees.

Federal Rule of Civil Procedure 8(e) states that "[p]leadings must be construed so as to do justice." As the Eleventh Circuit has explained, a complaint must "give[] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Winther v. U.S. Steel Corp.*, 852 F. App'x 482, 484 (11th Cir. 2021).

Therefore, in interpreting the scope of a plaintiff's claims, the key inquiry is not whether the plaintiff intended to bring a particular claim, but whether the complaint put a "reasonable defendant on notice" of that claim. *Hodges v. AG of the U.S.,* 976 F. Supp. 2d 480, 496 (S.D.N.Y. 2013); *see also Dombos v. Omar Izquierdo*, No. CV 13-696 WJ/CG, 2013 WL 12329337, at *2 (D.N.M Sept. 30, 2013) (noting that although the plaintiff had "asserted that he did not intend to bring a claim under § 1983 … intentional or not, his complaint stated such a claim").

Here, the Ridge's Complaint placed BCBS on notice that unpaid BCs under FEHBA-plans would be in dispute. For example, the Complaint states that "[t]his litigation involves Non-ERISA claim payments due the Ridge by the Defendants." (Doc. 2, #418, ¶ 38). Elsewhere, the Complaint states that "[t]his lawsuit seeks to recover benefits due to the Ridge under the terms of those BCBS health plans which were not governed by ERISA, to enforce rights under the terms of the plans, and/or to clarify rights to future benefits under the terms of the plans." (*Id.* at #418, ¶ 39).

Nowhere in the Complaint does the Ridge expressly define the full scope of "the Claim Payments due the Ridge by the Defendants." (*Id.* at #418, ¶ 38). However, the fact that the Ridge expressly and repeatedly *excludes* ERISA plans from the scope would suggest to a reasonable defendant that all other unpaid claims under *any* plans, including FEHBA-plans, are in dispute. (*Id.*, Doc. 2, #418, ¶¶ 38, 39, #425, ¶¶ 92, 93, #430, ¶ 129). To be sure, the inclusion of J.E.'s name (who was FEHBA-plan covered) on the Spreadsheet, in and of itself, is not dispositive. But, when read in conjunction with the Ridge's other statements in the Complaint regarding the

12

breadth of its claims, coupled with the contrast between the express exclusion of ERISA claims, with no corresponding exclusion of FEHBA-plan claims, the Court finds that the Complaint placed BCBS on notice that the Complaint encompassed unpaid BCs under FEHBA-plans.

### 2. The Ridge Waived All Claims Giving Rise To § 1442(a)(1) Jurisdiction After Removal.

Even if the Complaint included FEHBA-plan claims, the Ridge may instead be arguing that it has waived all claims giving rise to § 1442(a)(1) jurisdiction in the time since the case was removed.

While neither the Supreme Court nor the Sixth Circuit have ever addressed the propriety of post-removal claim waivers in § 1442(a)(1) cases, other courts have addressed this topic. For example, the Fifth Circuit has observed that, "[c]ourts regularly recognize post-removal claim disclaimers in federal officer proceedings." *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 n.28 (5th Cir. 2015).

On the district level, numerous courts likewise have weighed in on this issue. *See, e.g., Frawley v. Gen. Elec. Co.,* No. 06 Civ. 15395(CM), 2007 WL 656857 (S.D.N.Y. Mar. 1, 2007); *Martincic v. A.O. Smith Corp.*, Civil Action No. 2:20-cv-958-WSS, 2020 WL 5850317 (W.D. Pa. Oct. 1, 2020); *Dougherty v. A.O. Smith Corp.,* Civil Action No. 13-1972-SLR-SRF, 2014 WL 3542243 (D. Del. July 16, 2014), *report and recommendation adopted*, Civ. No. 13-1972-SLR-SRF, 2014 WL 4447293 (D. Del. Sept. 8, 2014). The facts in *Dougherty*, 2014 WL 3542243, are relatively typical of these cases. There, the plaintiff sought to remand his asbestos exposure case to state court, arguing, in pertinent part, that he waived all claims that provided the basis for

13

§ 1442(a)(1) jurisdiction after the case was removed. *Id.* at *9. *Dougherty* evaluated the plaintiff's alleged waiver in light of prior district court precedent, and this Court finds its analysis of the case law in this area instructive. *Id.* at *9–19.

The bottom line is that case law suggests that post-removal claim disclaimers, or waivers, can give rise to remand. But that is not to say that remand is appropriate in every such case. Rather, the *Dougherty* court asked two questions in determining whether to remand based on a post-removal claim waiver. First, were the terms of the waiver offered by the plaintiff effective, or were they merely "artful pleading for purposes of circumventing federal officer jurisdiction?" *Id.* at *10. Second, if the waiver was effective, would remand comport with the principles of "judicial economy, convenience, and fairness to the parties?" *Id.* at *16; *see also Merit Systems*, 762 F.2d at 133.

Of course, the framework for assessing post-removal waivers matters only if such a waiver has occurred in the first instance. The Court concludes that here, one has. As noted above, the Ridge states in its Motion to Remand that "none of the disputed claims upon which the state law complaint is based involves an unpaid claim under the Federal Employee Health Plan." (Doc. 10, #463). To be sure, by its terms, this statement seems directed towards the Complaint and the Ridge's preferred interpretation of the text of that document. At the same time, though, the statement also unequivocally evinces the Ridge's intent not to pursue the issue of FEHBA-plans in this litigation. Thus, the statement suffices to waive these claims, even if they were originally included in the Complaint.

Given that post-removal waiver of FEHBA-plan claims, the Court next considers whether the terms of the waiver were effective or whether they were merely "artful pleadings for the purposes of circumventing federal officer jurisdiction." *Dougherty*, 2014 WL 3542243, at *10. This inquiry is known as the "good faith" test. *Martincic,* 2020 WL 5850137, at *3.

To explain the need for, and the contours of, the "good faith" test, the Court must further elaborate on the circularity concerns to which some § 1442(a)(1) claim disclaimers and waivers have given rise. As a general matter, courts have been unwilling to credit waivers or disclaimers when the "applicability [of the waiver] turns on the core question of whether a defendants' alleged tort was required or caused by their relationship with the federal government." *Id.* For example, in *Corley v. Long-Lewis,* 688 F. Supp. 2d 1315 (N.D. Ala. 2010), the plaintiff brought a case for asbestos exposure, but in the complaint he:

> expressly disclaim[ed] every claim arising under the Constitution, treaties or laws of the United States, including any claim arising from an act or omission on a federal enclave, or by any officer of the United States or any agency or person acting under him/her under color of such office.

*Corley*, 688 F. Supp. 2d at 1335. The *Corley* Court rejected this disclaimer, stating that:

> I am reluctant to find that the plaintiffs can defeat a government contractor's right to remove by disclaiming any claim arising from any act or omission compelled by a government agency. Such a circular disclaimer would defeat the purpose of § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government.

*Corley*, 688 F. Supp. 2d at 1336 (quoting *Marley v. Elliot Turbomachinery Co.,* 545 F. Supp. 2d 1266, 1274–75 (S.D. Fla. 2008)).[3] In other words, given the waiver at issue, state courts would need to decide when and to what extent the contractors were entitled to protection as "federal officers," thereby potentially depriving federal contractors of the insulation from state-court decision-making that the removal statute was designed to provide.

Courts fashioned the "good faith" test in response to this circularity concern. This test seeks to distinguish between circular and non-circular waivers, treating the former as effective, while ignoring the latter. As *Martincic* explains:

> [the "good faith" test] draws a meaningful distinction between 'artful' (i.e. opaque and ambiguous) pleading for circumventing federal officer jurisdiction and clear and unambiguous disclaimers intended to prevent removal. The former is generic; the latter is specific. The former shows bad faith; the latter shows good faith. The former is ineffective; the latter is effective.

---

[3] Although the *Corley* and *Marley* courts both ultimately reject the disclaimers at issue in those cases as circular, this Court respectfully disagrees with *Martincic*'s statement that those cases hold disclaimers are "*categorically* ineffective because they are circular." *Martincic,* 2020 WL 5850317, at *2 (emphasis added). Rather, those cases suggest that a disclaimer could be valid if properly phrased. For example, *Corley* compares the disclaimers in that case to earlier cases where courts had found disclaimers to be valid:

> [t]he disclaimers in those cases, however, waived any liability arising out of work done on federal premises, irrespective of whether the work was done under the requirements of a federal agency or not. In contrast, the disclaimer here is more limited and is contingent on the Navy's contractual limitations and specifications.

*Corley,* 688 F. Supp. 2d at 1335–36 (quoting *Marley,* 545 F. Supp. 2d at 1274–75). Thus, *Corley* and *Marley* do not categorically reject *all* disclaimers on circularity grounds. Rather, *Corley* and *Marley* held that disclaimers must be rejected *if* they are circular. Stated differently, a disclaimer must be rejected as "defeat[ing] the purpose of § 1442(a)(1) [if it] would force [defendants] to prove in state court that they were acting under the direction of the government." *Id.* at 1336 (quoting *Marley,* 545 F. Supp. 2d at 1274–75). But, understood that way, *Corley* and *Marley* are essentially adopting an approach resembling the "good faith" test, rather than rejecting all disclaimers and waivers categorically.

*Id.* at *3.

For example, in *Batchelor v. Am. Optical Corp.*, the court accepted the plaintiff's disclaimer excluding from his complaint any liability for asbestos exposure that arose during his service in the Navy. 185 F. Supp. 3d 1358, 1363 (S.D. Fla. 2016). In the face of that disclaimer, the defendant could not

> raise a colorable defense to Plaintiff's claims because [the defendant's] sole basis for removal is the contention that Plaintiff was exposed to asbestos while aboard the U.S.S. Gato, which is not at issue in this case. In other words, [defendant] cannot assert a colorable federal defense based on [§ 1442(a)(1)] immunity because such a defense pertains to claims that simply do … not exist.

*Id.* at 1364–65 (internal citations and quotation marks omitted). Thus, the key inquiry in applying the good faith test is whether the terms of a given disclaimer would interfere with the protection to federal officers (or contractors) that § 1442(a)(1) is designed to provide. If a disclaimer is sufficiently clear and specific that, on remand, the state court would not be left to determine whether an action was taken on behalf of an officer of the United States and under color of office, then the disclaimer is effective. If, on the other hand, the disclaimer is structured such that the state court would be required to answer that question in deciding the scope of the waiver, then the waiver is invalid.

The majority of federal district courts to consider the issue of § 1442(a)(1) disclaimers and waivers appear to have adopted the "good faith" test. *Martincic*, 2020 WL 5850317 at *3. Finding the test compelling, this Court also adopts it here.

Under the good-faith test, the Ridge's statement that it is not seeking recovery based on "an unpaid claim under the Federal Employee Health Plan" (Mot., Doc. 10,

#463), constitutes a non-circular, and therefore effective, waiver. The Ridge does not say, for example, that it is "waiving any claim that might implicate § 1442(a)(1)." Phrased that way, of course, a state court would be required, on remand, to determine whether the statute applies to a given claim based on the state court's view of the scope of the federal officer category, giving rise to the circularity concerns identified above. Here, by contrast, the Ridge waives all claims related to any BCs under FEHBA-plans. That is a discrete and readily identifiable category whose membership does not require the state court to consider the contours of the federal officer removal statute. Thus, a waiver as to that category of claims meets the good faith test.[4]

That leaves one final question. Because the Court finds that the Ridge has effectively waived the claims that would provide the basis for § 1442(a)(1) jurisdiction, the question is whether this waiver warrants remand of the remaining claims. Certainly, the Court is not *required* to remand those claims:

> [w]hen federal parties remove an action under Section 1442(a)(1), the federal court assumes jurisdiction over all the claims and parties in the

_____

[4] In its Opposition, BCBS argues that claim disclaimers are ineffective where, "as here, [a] Plaintiff has affirmatively put a [FEHBA-plan] at issue." (Doc. 17, #496 (citing *Reinbold v. Advanced Auto Parts,* Case No. 18-CV-605-SMY-DGW, 2018 WL 3036026 at *2 (S.D. Ill. June 19, 2018))). But that argument misapplies *Reinbold,* which states that "disclaimers [do] not defeat removal where … the plaintiffs sought to hold the defendant liable for acts or omissions related to its asserted official authority in contravention to the language of the disclaimer." *Id.* at *2.

*Reinbold* addressed a pre-removal disclaimer included in a complaint, not a post-removal claim waiver like the one at issue in this case—an important distinction. When a plaintiff includes a disclaimer in his or her complaint and later reverses course by asserting claims implicating § 1442(a)(1), then the plaintiff has likely rendered that disclaimer void (or at least dubious). It is a different matter where, as here, a plaintiff initially includes in the complaint claims that could implicate § 1442(a)(1), but then *later* disclaims those claims. That is effectively what happens any time a plaintiff asserts a post-removal claim waiver, which multiple courts have stated are effective. *See, e.g., Wilde,* 616 F. App'x at 715 n.28; *see also Martincic v. A.O. Smith Corp.*, 2020 WL 5850317; *Dougherty v. A.O. Smith Corp.,* 2014 WL 3542243.

case regardless of whether the federal court could have assumed original jurisdiction over the suit. … *If the federal party is eliminated from the suit after removal … the district court does not lose its ancillary or pendent-party jurisdiction over the state law claims against the remaining non-federal parties.* … Instead the district court retains the power either to adjudicate the underlying state law claims or to remand the case to state court.

*In re Jenkins Clinic Hosp. Found.,* 1988 WL 114807, at *4 (emphasis in original) (quoting *Merit Systems,* 762 F.2d at 132–33). In other words, it is a discretionary decision whether to remand. And, in making that decision, the Court is to weigh the interests of "comity, fairness, and judicial economy."[5] *Merit Systems,* 762 F.3d at 133. For example, in *Merit Systems*, the court found remand was appropriate after the

---

[5] This Court agrees with *Dougherty* that a district court has discretion in determining whether to remand a case after the claims giving rise to § 1442(a)(1) jurisdiction are eliminated. *Dougherty,* 2014 WL 3542243, at *16. However, this Court respectfully disagrees with *Dougherty* that this decision should proceed as a 28 U.S.C. § 1367 supplemental jurisdiction analysis. *Id.; see also Martincic*, 2020 WL 5850317, at *4.

Section 1367 grants a district court jurisdiction over purely state law claims, even where it would lack diversity jurisdiction, if these claims are "so related" to other claims over which the court has original jurisdiction as to "form part of the same case or controversy." When the federal claims giving rise to original jurisdiction are eliminated from a case, a court may continue to exercise § 1367 supplemental jurisdiction over the remaining state law claims if doing so would comport with the principles of "judicial economy, convenience, fairness, and comity." *Ferrette v. Cuyahoga Cnty. Bd. of Elections*, 105 F. App'x 722, 727 (6th Cir 2004) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1998)).

However, § 1367 does not apply in cases where the basis of a court's initial jurisdiction is § 1442(a)(1). Rather, "[w]hen federal parties remove an action under Section 1442(a)(1), the federal court assumes jurisdiction over all the claims and parties in the case regardless of whether the federal court could have assumed original jurisdiction over the suit." *In re Jenkins Clinic Hosp. Found.,* 1988 WL 114807, at *4. Stated differently, it is unnecessary for a court to invoke its powers of § 1367 supplementary jurisdiction in a case where § 1442(a)(1) jurisdiction applies, because § 1442(a)(1) grants the court jurisdiction over the *entire* case, not merely certain claims *within* the case. Therefore, when the specific claims giving rise to § 1442(a)(1) jurisdiction are eliminated, the court does not conduct a § 1367 supplemental jurisdiction analysis to determine whether to adjudicate the remaining claims. Instead, the court conducts a § 1442(a)(1) ancillary-claim analysis. *Merit Systems,* 762 F.2d at 133. However, although the § 1442(a)(1) ancillary-claim analysis and the § 1367 supplemental jurisdiction analysis rest on different statutory foundations, the two tests are essentially identical in practice. *Compare id. with Ferrette,* 105 F. App'x at 727.

federal officer party providing the basis for removal was eliminated from the case. In reaching this holding, the court highlighted that the case presented "complex question[s] of purely local law" and the fact that the case had not yet reached proceedings on the merits. *Id.*

Here, the Court finds the factors of comity, fairness, and judicial economy weigh in favor of remand. In particular, the Court notes that this case remains in its relative infancy. BCBS, for example, has yet to even file its Answer to the Ridge's Complaint. Thus, judicial economy will not be sacrificed by remanding the case at this stage of the proceedings. Moreover, the Ridge has alleged eight separate causes of action under Ohio state law. Comity suggests that an Ohio court, not the federal court, would be better positioned to adjudicate those claims.

Accordingly, the Court remands this case to the Clermont County Court of Common Pleas for further proceedings, based on the Ridge's representation that it will not pursue recovery for BCs under FEHBA-plans. That being said, "if [the Ridge] later attempt[s] to reverse course, and [is] allowed to do so by the state court despite [its] express claim disclaimer, [BCBS] can seek removal once again." *Dougherty,* 2014 WL 3542243, at *18.

## C. The Court Rejects The Ridge's Request for Attorneys' Fees.

That leaves only the Ridge's request for attorneys' fees. Under 28 U.S.C § 1447(c), "[a]n order remanding [a] case may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In explaining when fees are appropriate under § 1447(c), the Supreme Court has

observed that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the Court finds that BCBS had an objectively reasonable basis upon which to seek removal. As more fully described above, remand here is predicated on the Ridge's *post-removal* waiver. Given the Court's finding that the state-court complaint included (or at least did not expressly disclaim) FEHBA-plan claims, the Court finds that BCBS had at least a plausible basis for removing this action. Indeed, four circuits previously have found that a FEHBA-plan administrator, like BCBS, may properly remove to federal court when it is sued in its capacity as an administrator of healthcare benefits for federal employees. *See St. Charles I*, 935 F.3d at 358*; Goncalves*, 865 F.3d at 1247; *Jacks*, 701 F.3d at 1235; *Anesthesiology Assocs. of Tallahassee*, 2005 WL 6717869, at \*2. And the fact pattern in *St. Charles I* is strikingly similar to that in the instant case. There, a defendant insurance company was also sued for paying its members rather than the healthcare provider to whom the members had assigned their benefits. *St. Charles I,* 935 F.3d at 355. Given that the Fifth Circuit found removal was proper in *St. Charles I,* this Court likewise finds that BCBS had an objectively reasonable belief that removal would be proper in this case as well. *Id.* at 357–58.

Accordingly, the Court denies the Ridge's request for attorneys' fees.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Ridge's Motion to Remand (Doc. 10) and **REMANDS** this case to the Clermont County Court of Common Pleas for further proceedings. The Court, however, **DENIES** the Ridge's request for attorneys' fees. The Court **DIRECTS** the Clerk to **TERMINATE** this matter on the Court's docket.

      **SO ORDERED.**


November 8, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**